NO. ______________________

# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS AMARILLO DIVISION

***************

## TARA ZOE RIOS

currently confined as Prisoner #02585730 at the Woodman State Jail of the Texas Department of Criminal Justice – Correctional Institutional Division,
**Petitioner,**

v.

## ERIC GUERRERO

Director, Texas Department of Criminal Justice – Correctional Institutional Division
**Respondent.**

***************

# PETITION FOR WRIT OF HABEAS CORPUS BY A PRISONER IN STATE CUSTODY

***************

John Bennett
Panhandle Area Public Defender
900 South Polk Street, Suite 208
Amarillo, Texas 79101
Telephone: (806) 282-4455
Facsimile: (806) 398-1988
State Bar No. 00785691
Attorney for the Petitioner

# TABLE OF CONTENTS


Parties & Their Counsel in State Court .................................................. 3

Index of Authorities .......................................................................... 4

Initial Information ............................................................................ 7

Ground for Relief ............................................................................... 8

Is incarceration for an indeterminate period a *valid*, *voluntary* alternative to abandoning a timely-invoked structural right?

Prayer ............................................................................................... 28

Word Count ....................................................................................... 29

Certificate of Service ........................................................................ 29

Appendix ....................................................................... following page 29

*consisting of:*

Exhibit A ................................................... Judgment & Sentence

Exhibit B .................................. Pages from Reporter's Record of trial, volume II

Exhibit C ............................................ Opinion from the Seventh Court of Appeals of Texas

Exhibit D .................................... Refusal of discretionary review from the Texas Court of Criminal Appeals

# PARTIES AND THEIR COUNSEL IN STATE COURT

**Tara Zoe Rios, Appellant**

| | |
|---|---|
| Trial Counsel: | Clint Barkley, Esq. (State Bar #24038759)<br>Phoebe Giglotti, Esq. (State Bar # 24134066)<br>Panhandle Area Public Defenders<br>900 South Polk Street, Suite 206<br>Amarillo, Texas 79101<br>Telephone: (806) 242-3415 |
| Appellate (and current) Counsel: | John Bennett, Esq. (State Bar #00785691)<br>Assistant Public Defender<br>Panhandle Area Public Defender<br>900 South Polk Street, Suite 206<br>Amarillo, Texas 79101<br>Telephone: (806) 282-4455 |

**The State of Texas, Appellee**

| | |
|---|---|
| Trial Counsel: | Taylor Guerrero, Esq. (State Bar #24095995)<br>Potter County District Attorney's Office<br>501 S. Fillmore, Room 5A<br>Amarillo, Texas 79101<br>Telephone: (806) 379-2325 |
| Appellate Counsel: | Kerry Sullivan, Esq. (State Bar #19487350)<br>Potter County District Attorney's Office<br>501 S. Fillmore, Room 5A<br>Amarillo, Texas 79101<br>Telephone: (806) 379-2325 |

# INDEX OF AUTHORITIES

Cases


*Arizona v. Fulminante*, 499 U.S. 279, 111 S. Ct. 1246, 113 L.Ed. 2d 302 (1991) .......... 10,27

*Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972) .......... 17

*Batchelor v. Cain*, 682 F.3d 400 (5th Cir. 2012) .......... 11

*Faretta v. California,* 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975) .......... 10-12,16-17,19-20,23,26-27

*Harrington v. Richter*, 562 U.S. 86 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011) .......... 10,25,27

*Johnson v. Cain*, 712 F.3d 227 (5th Cir), *cert. denied*, 571 U.S. 958, 134 S. Ct. 431, 187 L. Ed. 2d 290 (2013) .......... 8

*Johnson v. United States*, 520 U.S. 461, 117 S. Ct. 1544, 137 L. Ed. 2d 718 (1997) .......... 10,27

*Lathem v. State*, 514 S.W.3d 796 (Tex. App. – Fort Worth 2017, no pet.) .......... 13

*McKaskle v. Wiggins*, 465 U.S. 168, 104 S. Ct. 944, 79 L. Ed. 2d 122 (1984) .......... 11

*Rios v. State*, 2026 Tex. App. LEXIS 3433, 2026 WL 1014158 (Tex. App. – Amarillo, 14 April 2026, pet. ref'd) (unpublished) .......... Appendix C

*State v. Rangel*, 980 S.W.2d 840 (Tex. App. – San Antonio 1998, no pet.) .......... 17

*Villarreal v. Texas*, 607 U.S. 465, 146 S. Ct. 756, 224 L. Ed. 2d 247 (2026) .......... 12

*Weaver v. Massachusetts*, 582 U.S. 286, 295, 137 S. Ct. 1899, 198 L. Ed. 2d 420 (2017) .......... 11

*Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000) .......... 9,26

*Zadvydas v. Davis*, 533 U.S. 678, 121 S. Ct. 2491, 150 L. Ed. 2d 653 (2003) .......... 13

<u>Statutory provision</u>

28 U.S.C.A. § 2254 (West 2025) .......... 6,9-10,25,27-28

**NO. ________________________**

# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS AMARILLO DIVISION

***************

## TARA ZOE RIOS

currently confined as Prisoner #02585730 at the Woodman
State Jail of the Texas Department of Criminal
Justice – Correctional Institutional Division,
**Petitioner,**

v.

## ERIC GUERRERO

Director, Texas Department of Criminal Justice,
– Correctional Institutional Division
**Respondent.**

***************

# PETITION FOR WRIT OF HABEAS CORPUS BY A PRISONER IN STATE CUSTODY

***************

Petitioner Tara Zoe Rios, by and through counsel, requests the Court – under 28 U.S.C.A. § 2254(d)(1)&(e)(1) (West 2025) – order that the State of Texas afford her a new trial, with the issuance of a writ of habeas corpus if the State does not.

## INITIAL INFORMATION

This petition challenges a conviction for driving while intoxicated with a child under 15 in the vehicle. On October 14, 2025, a jury in cause 085587-B-CR in the 181st District Court of Potter County returned the conviction and a sentencing verdict of the maximum possible punishment: two years' imprisonment in Texas State Jail (and a $10,000 fine, later waived). (Exhibit A to this Petition). The petitioner did not testify at either phase of trial..

The petitioner appealed her conviction to the Seventh Court of Appeals of Texas as cause number 07-25-00294-CR. Except for one about court costs and fees, each issue revolved around the denial of her right to represent oneself – the ground for relief raised here. But on April 14, 2026, the Seventh Court of Appeals affirmed the conviction. (Exhibit C). Accordingly, on April 29, 2026, the petitioner timely filed a motion for rehearing, but on May 19, 2026, her motion was denied.

The petitioner then filed a petition for discretionary review at the Court of Criminal Appeals of Texas on May 27, 2026, which was assigned cause number PD-0425-26, raising the issue here. But on July 23, 2026, discretionary review was refused. (Exhibit D).

Other than those, no petitions, applications or motions regarding the petitioner's conviction have been filed in any court, state or federal. The petitioner has no further sentence to serve after the present one. She faces no parole revocation or disciplinary proceeding.

## GROUND FOR RELIEF

> Is incarceration for an indeterminate period a *valid*, *voluntary* alternative to abandoning a timely-invoked structural right?

Exhaustion of State Remedies

On appeal the petitioner attacked her conviction by pointing directly to the matter of self-representation via several different angles, including whether the purported waiver was voluntary. And she raised the issue she presents here in a PDR to the Court of Criminal Appeals, amply exhausting state remedies. *Johnson v. Cain*, 712 F.3d 227, 231 (5th Cir.) ("The exhaustion requirement is satisfied when the substance of the federal claim is 'fairly presented' to the highest state court on direct appeal or in state post-conviction proceedings, 'even if the state court fails to address the federal claim'…"), *cert. denied*, 571 U.S. 958, 134 S. Ct. 431, 187 L. Ed. 2d 290 (2013).

Standard of Review

To prevail in a petition under 22 U.S.C.A. § 2254 (West 2025), all questions of law and mixed questions of law and fact are evaluated under a prescribed standard:

> **(d)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> **(1)** resulted in a decision that was contrary to … clearly established Federal law, as determined by the Supreme Court of the United States…

*Id.* (ellipsis points added). Accordingly

> a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.

*Williams v. Taylor*, 529 U.S. 362, 413, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). For questions of *fact*, § 2254 requires that state review

> **(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> **(e)(1)** In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

§ 2254. In sum, § 2254:

> preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal.

*Harrington v. Richter*, 562 U.S. 86, 101, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011). Via desultory state-court review, such an extreme malfunction occurred here, and no fairminded jurists would disagree.

<u>The Applicable Supreme Court Federal Precedent</u>

Structural errors "defy analysis by 'harmless-error' standards," because they "obviously" affect the "entire conduct of the trial from beginning to end." *Arizona v. Fulminante*, 499 U.S. 279, 309, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991). Put another way, a structural error is a "defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." *Johnson v. United States*, 520 U.S. 461, 468-9, 117 S. Ct. 1544, 137 L. Ed. 2d 718 (1997).

Very few structural errors exist, but being denied "the right to self-representation at trial" is one of them. *Johnson*, 520 U.S. at 469. The seminal case on the subject is *Faretta v. California,* 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975), which decisively ruled in its first paragraph that self-representation is a constitutional right:

> … the question is whether a State may constitutionally hale a person into its criminal courts and there force a lawyer upon him, even when he insists that he wants to conduct his own defense. It is not an easy question, but we have concluded that a State may not constitutionally do so.

*Id.*, 422 U.S. at 807. And the right "to make one's own defense personally – is thus necessarily implied by the Sixth Amendment," *id.*, 422 U.S. at 807, "based on the fundamental legal principle that a defendant must be allowed to make his own choices about the proper way to protect his own liberty." *Weaver v. Massachusetts*, 582 U.S. 286, 295, 137 S. Ct. 1899, 198 L. Ed. 2d 420 (2017). Harm analysis is inappropriate: "denial of the right to self-representation constitutes a structural error [and] …requires automatic reversal." *Batchelor v. Cain*, 682 F.3d 400, 405-6 (5th Cir. 2012), citing *McKaskle v. Wiggins*, 465 U.S. 168, 188, n.8, 104 S. Ct. 944, 79 L. Ed. 2d 122 (1984) ("Since the right of self-representation is a right that when exercised usually increases the likelihood of a trial outcome unfavorable to the defendant, its denial is not amenable to 'harmless error' analysis. The right is either respected or denied; its deprivation cannot be harmless").

Thus absent a defendant's demonstrated inability to represent herself (for which a hearing under the dictates of *Faretta* is required), no trial will end in a truly dependable result:

> An unwanted counsel "represents" the defendant only through a tenuous and unacceptable legal fiction. Unless the accused has acquiesced in such representation, the defense presented is not the defense guaranteed him by the Constitution, for, in a very real sense, it is not *his* defense.

*Id.*, 422 U.S. at 821. *Faretta* remains good law today:

> We have long held that "'[a]n accused is entitled to be assisted'" – not merely directed – "'by an attorney … the Sixth Amendment "speaks of the 'assistance' of counsel, and an assistant, however expert, is still an assistant."

*Villarreal v. Texas*, 607 U.S. 465, 477 and n. 4, 146 S. Ct. 756, 224 L. Ed. 2d 247 (2026) (brackets in original; ellipsis points added).

And a defendant cannot be forced to *choose* between constitutional rights, even if one such option exists only in her own understanding:

> in this case Garrett was obliged either to give up what he believed, with advice of counsel, to be a valid Fourth Amendment claim or, in legal effect, to waive his Fifth Amendment privilege against self-incrimination. In these circumstances, we find it intolerable that one constitutional right should have to be surrendered in order to assert another.

*Simmons v. United States*, 390 U.S. 377, 394, 88 S. Ct. 967, 19 L. Ed. 2d 1247 (1968). And even if Ms. Rios were an illegal immigrant, her indefinite imprisonment would violate the Fifth Amendment;

> A statute permitting indefinite detention of an alien would raise a serious constitutional problem. The Fifth Amendment's Due Process Clause forbids the Government to "deprive" any "person … of … liberty … without due process of law."

*Zadvydas v. Davis*, 533 U.S. 678, 690, 121 S. Ct. 2491, 150 L. Ed. 2d 653 (2003). In *Simmons* the defendant's perspective is determinative; Mr. Garrett believed he had a Fourth Amendment claim due to counsel's advice, even if that advice was erroneous. 390 U.S. at 394. Being forced to relinquish either an undeniable Sixth Amendment claim to avoid what appeared to her at the time to be a Fifth Amendment right barring indefinite imprisonment barred by *Zadvydas*, 533 U.S. at 690, *is* the type of "choice" that *Simmons* found infirm here gave Ms. Rios.

<u>The Request was Timely</u>

A defendant may represent herself in Texas state courts if she makes her request "before the jury is impaneled." *Lathem v. State*, 514 S.W.3d 796, 803 (Tex. App. – Fort Worth 2017, no pet.). The opinion from the Seventh Court of Appeals in Ms. Rios' case implicitly acknowledges her request was timely:

> Appellant argues "one cannot waive or abandon a right one does not possess." Here, however, Appellant asserted her right to represent herself and thus, "possessed" it at that time.

*Rios v. State*, 2026 Tex. App. LEXIS 3433, at * 72026 WL 1014158 (Tex. App. - Amarillo, 14 April 2026, pet. ref'd) (unpublished) (Exhibit C to this Petition).

The Situation at Hand

> "He that complies against his will,
> is of his own opinion still."
>
> Samuel Butler, *Hudibras*, 1678

The local public defender's office was originally appointed to represent Ms. Rios. (CR 7) (Exhibit D). Another attorney later substituted in as counsel of record, but Ms. Rios and that lawyer were evidently unable to come to terms, so the public defender originally appointed was re-appointed. (CR 14, 17, 19-20, 22, 24).

On the day the case was set for jury trial, a retired judge from another court was sitting in for the elected judge of that court. When the case was called Ms. Rios' counsel, having previously obtained a continuance in this case, quickly made an oral motion for another continuance, noting to the visiting judge that he had been unable to communicate properly with her, *i.e.*, he could not discuss with his client the best ways to defend her "because of what I think is going on with her, some – some mental health, some drug use." (RR II 4) (Exhibit B to this Petition).

But when she heard counsel's further continuance motion, though, Ms. Rios told the visiting judge, "That is not what I asked for at all."

(RR II 4). The State asserted it would not oppose another continuance, but Ms. Rios told the court, "That's not what I would like at all" – she wanted to proceed to trial immediately. (RR II 5). The visiting judge showed he understood this, telling her that "what I'm perceiving is that you're anxious to get this matter resolved." (RR II 8). When asked if she had been able to communicate with her attorneys, Ms. Rios answered that they were not taking into account her wishes on how to defend herself:

> they won't do anything that I've asked them. They won't listen. They won't listen. They won't help me. They won't – they won't do anything for me. They're working against me as best I can tell. I mean, I don't think they're like trying to harm me, but they're not listening to me and doing what I asked. They work for me, right?

(RR II 5-6). Ms. Rios protested her innocence and admitted she had problems from a very difficult childhood and marriage, and that some drug use was ongoing, but assured the visiting judge she was mentally competent and sane. And the judge did not ask whether she was *that day* under the influence of drugs or suffering from mental instability, and the State did not suggest either was true. (RR II 5-7).

Ms. Rios then plainly invoked her right to self-representation: "I would like to represent myself. Like, these guys aren't even doing it," (RR II 8), partly because of an earlier proceeding in another case:

> this time I am not nearly as sick and do want to stand up for myself and make sure that I'm being treated fairly this time, and that that does not ever happen again.

(RR II 20). The visiting judge advised against this: "I strongly would recommend that you not represent yourself … Not certainly in your best interest." (RR II 8). As subsequent events showed, even the judge did not consider his admonitions anything akin to a *Faretta* hearing. Ms. Rios replied that she understood the court's advice but persisted in her request to represent herself *that day*, saying the charge had "held me back for almost two years now." (RR II 8).

The visiting judge then told Ms. Rios that guilt or innocence "will be a matter, of course, for – for a jury to decide, and *that's what we're here for today*." Ms. Rios agreed, saying, "Cool. I would like [to] do that. Let's do that. I would like to talk to them now. And I don't need them" – indicating her appointed attorneys. (RR II 8) (emphasis added).

The visiting judge again recommended representation by counsel, which Ms. Rios understood, but insisted that "I'm going to ahead and do what I have the right to do … Well, let's do it. Let's go." (RR II 9, 12). But in this she did not relinquish her right to self-representation; when the State subsequently asked the court to deny a discovery request, Ms.

Rios asked, "Excuse me. I'm not understanding that and *I'm trying to represent myself*, so could you explain that." (RR II 14) (emphasis added). Ultimately, *without* a *Faretta* hearing, the judge barred Ms. Rios from representing herself that day – the day on which the trial had been set after a continuance from the setting the month before – and after 27 months from when the indictment was handed down; as she herself had told the judge, the matter had been in limbo for two years, and she wanted to go to trial without further delay. (CR 5,8,10). And a 27-month delay certainly reflects unquestionably presumptive prejudice if raised in a speedy-trial claim, prompting inquiry into the other three factors of *Barker v. Wingo*, 407 U.S. 514, 532-3, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972). See *State v. Rangel*, 980 S.W.2d 840, 843 (Tex. App. – San Antonio 1998, no pet.) ("Texas courts have generally found a delay beyond eight months to be presumptively prejudicial").

But the visiting judge assured Ms. Rios no further delay would occur, *if* she withdrew her invocation of the right to represent herself, but refusing to surrender that right would mean postponing the Faretta hearing until such time as the elected judge returned, set the hearing, and conducted it:

> if we proceed with your trial today, you understand I'll require your cooperation, and require your not speaking out when you're not supposed to. *You would not be entitled to address the jury yourself*. Your counsel would do that on your behalf.

(RR II 7-8) (emphasis added). Ms. Rios evidently took these remarks to mean the attorneys she did not want would be *stand-by* counsel only, saying, "I'll speak for myself though. And I'll ask the questions and stuff. I'm allowed to do that. It's my legal right." (RR II 9).

At this the visiting judge *then* made the price of insisting on self-representation *monetarily* steep for Ms. Rios:

> So let me make sure I understand. Your desire is to proceed self-represented. Here – here's where we are. I'll just tell you where I'm coming from. If you're going to allow counsel to represent you, then we'll proceed today. If you insist on discharging your counsel and proceeding what we call pro se or representing yourself, which you do have a right to do, then I'm going to defer this matter back and let [the elected judge] make the decision with respect to your self-representation.
>
> …
>
> The Court, because you're here on a bond surrender, the Court is going to reset your bond at $15,000. No personal recognizance, which means that in order for you to be released, you're going to have to make your bond – you're going to have to make bond again to be released.

(RR II 9-10). Having represented clients at arraignments for years, undersigned counsel cannot remember a bond imposed so high as $15,000 – even on a bond surrender – for a non-violent, non-sexual state

jail felony. The exorbitant bond virtually ensured that she, an indigent who had been appointed counsel and was unlikely to come up with the $1,500 or so needed to satisfy a bail bond company, would remain incarcerated. Particularly when added to the threat of putting off the trial she desperately wanted to begin immediately, (RR II 8), the bond was punitive and would remain unless Ms. Rios abandoned the structural, constitutional right in question. Although, as the visiting judge told her, she would have to spend that night in jail "because the trial will not be finished," (RR II 11), had the trial begun with *pro se* representation Ms. Rios would have been assured that proceedings would continue the next day until its conclusion. A separate *Faretta* hearing, that would have to be set by the elected judge, was much less likely to occur as quickly and, due to the exorbitant bond Ms. Rios would have to wait in jail – to her knowledge indefinitely – for the *Faretta* hearing to be set and then held.

Ms. Rios then again informed the visiting judge that she wanted the trial to occur that day: "let's go to trial right now then. Let's do it. That's the final answer. Let's finish this today. Bring the jury in. Let's do it. Period." (RR II 10). But despite these remarks' possible

appearance as a waiver of self-representation, subsequent events showed she did not intend them that way – a few minutes later she asked to see the witness list in case she needed to add "my people to this list that I would like to call." When told to discuss this with her counsel, Ms. Rios stated: "*I am my counsel*. I'm asking you how –." (RR II 15, 17) (emphasis added).

In response the visiting judge again told her that her choice was **either** (1) a trial that day with the jury panel summoned and with the attorneys she did not want representing her **or** (2) a *chance* at self-representation subject to the findings of the elected judge for that court at a *Faretta* that to her understanding at the time, might be far months away, and almost certainly to be jailed until it would be heard. In summing up the undesirable alternatives from which Ms. Rios would be forced to choose, the visiting judge stated,

> Ms. Rios, we've been through this several times. If you want to insist on being your own counsel, the Court is going to allow you to do that, but not today. Today we have a jury selected – a jury panel waiting.

(RR II 12, 17).

But Ms. Rios *still* refused to surrender the right – she asked to be taken to jail to make telephone calls and again tried to discharge her

counsel: "Take me to jail. Take me to Potter. I will – *y'all*' – evidently her counsel, "*are fired*," (RR II 17-18) (emphasis added). She asked for a change of venue, but the visiting judge assured her such a motion would not only be delayed but certainly denied as well. (RR II 19-21).

Ms. Rios then made a statement evidently concluding, *unwillingly and reluctantly*, that trial that day with attorneys she had several times discharged was less odious to her than indefinite incarceration:

> Well, let's just get it over with … Let's just do it. Let's just do it. Let's do it. Let's get it done. I'm sorry. I'll sit here and shut up. Let's go, but I'm testifying, so let's go.

(RR II 21-2). The visiting judge took this reluctant statement as an intelligent, voluntary waiver, saying: "All right. We'll proceed. Go ahead and seat the jury." (RR II 22) (Exhibit B to this Petition). Only *after* Ms. Rios resentfully accepted trial that day by giving up self-representation did the visiting judge give the venire its instructions, including that the sitting judge would return the next day. (RR II 23).

And ultimately Ms. Rios could not have done *worse* by representing herself – while represented by appointed counsel, she was convicted of the charged offense and received the maximum sentence possible. (Exhibit A to this Petition).

The State-Court Review

Despite all this, the state court held that Ms. Rios had sufficiently and voluntarily waived the right of self-representation after invoking it:

> Appellant *waived* her right to represent herself and *chose* to continue proceedings with counsel so that resolution of the criminal charges against her could be reached."

(p. 8) (emphases added) (Exhibit C). The opinion further concludes that since the sitting judge returned the following day, the choice given Ms. Rios was constitutionally proper, but the opinion conspicuously omits the crucial matter: the realization that nothing shows Ms. Rios knew of the elected judge's imminent return:

> Appellant was not forced to choose between two constitutional rights, i.e., that of self-representation and that of a speedy trial. The matter was set to proceed with the jury trial the day after the pre-trial hearing. And, the record shows the sitting judge did return the following day and conducted a trial on the merits.

(p. 8) (Exhibit C). In so doing the opinion destroys the presumption of its factual correctness under § 2254(e)(1) by ignoring the unassailable fact, although noted prominently in Ms. Rios' brief, that nothing indicated she was aware that the elected judge's return was imminent when she grudgingly accepted representation by counsel. (RR II 23) (Exhibit A) (Appellant's Brief, p. 49-50). *And even had she realized*

*this*, she had no assurance that a *Faretta* hearing would be held anytime soon. To Ms. Rios, the threat of an extended period of incarceration waiting for the elected judge to act was real.

Even further, flatly contradicting *Simmons* while citing as authority only an unpublished case, the opinion declared that the options the visiting judge's gave her between surrendering her Sixth Amendment right (self-representation) *or* her Fifth Amendment one (her freedom *sine die*) did *not* render her choice involuntary:

> while a waiver must be voluntary, that does not mean, "that a court may not, under certain circumstances, require the defendant to select from a limited set of options a course of conduct regarding his representation."

(p. 6-7) (emphasis added). But as Ms. Rios noted at length in her opening brief, *Simmons* bars giving defendants a "limited set of options" whose alternatives require surrendering one constitutional right or another. there one of the litigants "was obliged either to give up *what he believed*, with advice of counsel, *to be* a valid Fourth Amendment claim" *or* a Fifth Amendment claim. 390 U.S. 377, 394 (emphasis added). The "limited set of options" requiring Ms. Rios to relinquish either a Sixth Amendment right or what she perceived to be a Fifth Amendment one was no more constitutionally palatable.

To illustrate of the conundrum she faced, given the bond the visiting judge had imposed requiring her raise $1,500 or remain in custody, Ms. Rios included in her reply brief four scenarios:

> 1. The right to live in peace without unreasonable searches and seizures is inviolate, but unless a homeowner pays $1,500, law enforcement can appear at any time and search his residence looking for anything suspicious. A reviewing court finds this gives the homeowner a truly voluntary choice and so satisfies the Fourth Amendment.
>
> 2. The right of freedom of the press is guaranteed, but a newspaper that wants to print something contrary to the government's wishes must pay $1,500 to do so. A reviewing court finds that this condition gives journalists a truly voluntary choice and thus accords with the First Amendment.
>
> 3. The right to be free of cruel and unusual punishments is absolute, but unless an indigent defendant who gets a parking ticket pays a $1,500 fine, she will be beheaded. A reviewing court finds this condition gives the defendant a truly voluntary choice and is therefore acceptable under the Eighth Amendment.
>
> 4. The right to defend oneself in court is indisputable, but an indigent defendant whose competence to represent herself is not in doubt and who insists on that right must pay $1,500 or be incarcerated indefinitely pending a future hearing on a date not yet set. A reviewing court finds this gives the indigent defendant a truly voluntary choice and thus comports with the Fifth and Sixth Amendments.
>
> Do any of these sound proper or likely? The State Brief urges that the last one is constitutionally sound.

(Reply Brief, p. 6). Agreeing with the State, the Seventh Court of Appeals' opinion *also* found at least #4 to be constitutionally proper, and so affirmed Ms. Rios' conviction.

Significantly, the Seventh Court of Appeals' opinion also held that the error requires Ms. Rios to show that the visiting judge abused his discretion. The opinion cites two cases that met that standard, (Exhibit C, p. 5), implying Ms. Rios had not met that burden. But the abuse-of-discretion standard presupposes that the visiting judge *exercised* his discretion, and here he merely told Ms. Rios that insistence on the right would merely *postpone* the decision on that matter. He made no ruling on self-representation and so exercised no discretion to evaluate.

And that matter was left unanswered despite Ms. Rios' petition for discretionary review, which raised that specific state-law issue: "Is the abuse-of-discretion standard properly applied where the visiting judge refused to rule on the matter in question?" The matter is of course not cognizable here, but the absence of any consideration of this matter in the state courts illustrates the perfunctory review Ms. Rios' appeal, received, resulting in an "extreme malfunction" under *Harrington*, 562 U.S. at 101, and requiring correction in federal habeas corpus review.

<u>Conclusion</u>

As noted earlier, on a question of law or a mixed question, relief can be granted via § 2254(d)(1) in either of two circumstances:

> if the state court arrives at a conclusion opposite to that reached by this Court on a question of law *or* if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.

*Williams*, 529 U.S. at 413 (emphasis added). *Faretta* ruled that the facts presented warranted a new trial:

> prior to trial, the judge *sua sponte* held a hearing to inquire into Faretta's ability to conduct his own defense, and questioned him specifically about both the hearsay rule and the state law governing the challenge of potential jurors. After consideration of Faretta's answers, and observation of his demeanor, the judge ruled that *Faretta had not made an intelligent and knowing waiver of his right to the assistance of counsel*, and also ruled that Faretta had no constitutional right to conduct his own defense … In forcing Faretta, under these circumstances, to accept against his will a state a state-appointed public defender, the California courts deprived him of his constitutional right to conduct his own defense.

*Id.*, at 808-810, 835 (emphasis and ellipsis points added). The only difference is that Mr. Faretta *was* given a *Faretta* hearing, which the state visiting judge *denied* Ms. Rios unless she relinquished her freedom or declare herself willing to be incarcerated for such a hearing *sine die*. The record here plainly reveals not only a result contravening *Simmons* but one that differs from *Simmons* and *Faretta* despite facts "materially indistinguishable" from both of those Supreme Court cases. Both occurred here, although Ms. Rios needs only one to prevail. Her appointed counsel accordingly represented her at trial "only through a tenuous and unacceptable legal fiction." *Faretta*, 422 U.S. at 821.

Here no possibility can be reached by "fairminded jurists" as described by *Harrington* that the same result of *Faretta* and *Simmons* should not be repeated here. The Texas courts' scant evaluation of Ms. Rios' appeal on precisely the question raised here "resulted in a decision that was contrary to … clearly established Federal law as determined by the Supreme Court of the United States" under § 2254(d)(1), *i.e.*, *Faretta* and its progeny, *Johnson*, and particularly *Simmons*.

Even further, Ms. Rios has rebutted the prescribed "presumption of factual correctness" required by § 2254(d)(2)&(E)(1): the Seventh Court of Appeals' opinion stating the elected judge would have been back the next day, *without* the necessary qualification of that fact being beyond Ms. Rios' knowledge. As an aside, the omission indicates the reviewing court engaged in the harm analysis explicitly precluded by *Fulminante* and *Johnson*. But even more crucially, the facts as the opinion stated them rest on the erroneous conclusion that Ms. Rios realized incarceration might be only for one night, which is entirely absent from the record. This is an "unreasonable determination of the facts in light of the evidence presented in the State-court proceeding" and adequately rebuts the § 2254 presumption of correctness.

In short, under *either* possibility of § 2254(d)(1), a "conclusion opposite to that reached by this Court on a question of law," or "a decision differing from the Supreme Court "on a set of materially indistinguishable facts," then Ms. Rios should prevail. In the further alternative, she has met § 2254(d)(2)&(E)(1). Meeting any of these possibilities will suffice.

## PRAYER

The petitioner accordingly prays the Court order the State of Texas to afford her a new trial or, should the Texas courts refuse, to issue a writ of habeas corpus, or grant all relief the Court may deem appropriate.

Respectfully submitted,

/s/ *John Bennett*
Assistant Public Defender
Panhandle Area Public Defender
2607 Wolflin Avenue #106
Amarillo, Texas 79109
Telephone: (806) 282-4455
Facsimile: (806) 398-1988
State Bar No. 00785691
Attorney for the Petitioner

## WORD COUNT

I hereby certify that this entire Petition contains 5,786 words.

/s/ *John Bennett*
John Bennett

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above was served by email on the Office of the Texas Attorney General on August 17, 2026, to Jessica.Manojlovich@oag.texas.gov.

/s/ *John Bennett*
John Bennett

CC:DEFT

STEPHNIE MENKE
DISTRICT CLERK
October 17, 2025 3:48 P
POTTER COUNTY, TEXA
BY [signature] DEPUT

**CAUSE NO. 085587-B-CR**
INCIDENT NO. /TRN: 9288343350-A001

THE STATE OF TEXAS § IN THE 181ST DISTRICT COURT
§
V. § IN AND FOR
§
TARA ZOE RIOS § POTTER COUNTY, TEXAS
§
STATE ID NO.: TX16554627 §

# JUDGMENT OF CONVICTION BY JURY

Judge Presiding: **TITIANA D. FRAUSTO** | Date Sentence Imposed: **10/14/2025**

Attorney for State: **TAYLOR GUERRERO SBN:24095995** | Attorney for Defendant: **William Barkley SBN:24038759**

Offense for which Defendant Convicted:
**DRIVING WHILE INTOXICATED W/CHILD UNDER 15 YOA**

Charging Instrument: **INDICTMENT** | Statute for Offense: **PC 49.045(b)**

Date of Offense: **12/29/2023** | Plea to Offense: **NOT GUILTY**

Degree of Offense: **Felony - State Jail Felony**

Verdict of Jury: **GUILTY** | Findings on Deadly Weapon: **N/A**

1st Enhancement Paragraph: **N/A** | Finding on 1st Enhancement Paragraph: **N/A**

2nd Enhancement Paragraph: **N/A** | Finding on 2nd Enhancement Paragraph: **N/A**

Punishment Assessed by: **JURY** | Date Sentence Commences: (Date does not apply to confinement served as a condition of community supervision.) **10/14/2025**

Punishment and Place of Confinement: **TWENTY-FOUR (24) MONTHS TDCJ, CID - STATE JAIL; $10,000.00 FINE**

THIS SENTENCE SHALL RUN: **CONCURRENTLY.**

☐ **SENTENCE OF CONFINEMENT SUSPENDED, DEFENDANT PLACED ON COMMUNITY SUPERVISION FOR** .
(The document setting forth the conditions of community supervision is incorporated herein by this reference.)

☐ Defendant is required to register as sex offender in accordance with Chapter 62, Tex. Code Crim. Proc.
**(For sex offender registration purposes only)** The age of the victim at the time of the offense was **N/A** .

Fines: $ **10,000.00** | Restitution: $ **0** | Restitution Payable to: (See special finding or order of restitution which is incorporated herein by this reference.)

Court Costs: $ As per attached Bill of Cost | Reimbursement Fees: $ As per attached Bill of Cost

Was the victim impact statement returned to the attorney representing the State? **N/A**

***(FOR STATE JAIL FELONY OFFENSES ONLY)*** Is Defendant presumptively entitled to diligent participation credit in accordance with Article 42A.559, Tex. Code Crim. Proc.? **YES**

EXHIBIT A

| Total Jail Time Credit: | If Defendant is to serve sentence in county jail or is given credit toward the fine and costs, enter days credited below. | |
|---|---|---|
| **3 DAYS** | **N/A DAYS** | NOTES: N/A |

This cause was called for trial by jury and the parties appeared. The State appeared by her District Attorney as named above.

**Counsel / Waiver of Counsel (select one)**

☒ Defendant appeared with counsel.

☐ Defendant appeared without counsel and knowingly, intelligently, and voluntarily waived the right to representation by counsel in writing in open court.

☐ Defendant was tried in absentia.

Both parties announced ready for trial. It appeared to the Court that Defendant was mentally competent to stand trial. A jury was selected, impaneled, and sworn, and Defendant entered a plea to the charged offense. The Court received the plea and entered it of record.

The jury heard the evidence submitted and argument of counsel. The Court charged the jury as to its duty to determine the guilt or innocence of Defendant, and the jury retired to consider the evidence. Upon returning to open court, the jury delivered its verdict in the presence of Defendant and defense counsel, if any.

The Court received the verdict and **ORDERED** it entered upon the minutes of the Court.

**Punishment Assessed by Jury / Court / No election (select one)**

☒ **Jury**. Defendant entered a plea and filed a written election to have the jury assess punishment. The jury heard evidence relative to the question of punishment. The Court charged the jury and it retired to consider the question of punishment. After due deliberation, the jury was brought into Court, and, in open court, it returned its verdict as indicated above.

☐ **Court**. Defendant elected to have the Court assess punishment. After hearing evidence relative to the question of punishment, the Court assessed Defendant's punishment as indicated above.

☐ **No Election**. Defendant did not file a written election as to whether the judge or jury should assess punishment. After hearing evidence relative to the question of punishment, the Court assessed Defendant's punishment as indicated above.

In accordance with the jury's verdict, the Court **ADJUDGES** Defendant **GUILTY** of the above offense. The Court **FINDS** that the Presentence Investigation, if so ordered, was done according to the applicable provisions of Subchapter F, Chapter 42A, Tex. Code Crim. Proc.

The Court **ORDERS** Defendant punished in accordance with the jury's verdict or Court's findings as to the proper punishment as indicated above. After having conducted an inquiry into Defendant's ability to pay, the Court **ORDERS** Defendant to pay the fines, court costs, reimbursement fees, and restitution as indicated above and further detailed below.

**Punishment Options (select one)**

☒ **Confinement in State Jail or Institutional Division.** The Court **ORDERS** the authorized agent of the State of Texas or the County Sheriff to take and deliver Defendant to the Director of the Correctional Institutions Division, TDCJ, for placement in confinement in accordance with this judgment. The Court **ORDERS** Defendant remanded to the custody of the County Sheriff until the Sheriff can obey the directions in this paragraph. Upon release from confinement, the Court **ORDERS** Defendant to proceed without unnecessary delay to the District Clerk's office, or any other office designated by the Court or the Court's designee, to pay or to make arrangements to pay any fines, court costs, reimbursement fees, and restitution due.

☐ **County Jail—Confinement / Confinement in Lieu of Payment.** The Court **ORDERS** Defendant committed to the custody of the County Sheriff immediately or on the date the sentence commences. Defendant shall be confined in the county jail for the period indicated above. Upon release from confinement, the Court **ORDERS** Defendant to proceed without unnecessary delay to the District Clerk's office, or any other office designated by the Court or the Court's designee, to pay or to make arrangements to pay any fines, court costs, reimbursement fees, and restitution due.

☐ **Fine Only Payment.** The punishment assessed against Defendant is for a **FINE ONLY.** The Court **ORDERS** Defendant to proceed immediately to the District Clerk's office, or any other office designated by the Court or the Court's designee, to pay or to make arrangements to pay the fine, court costs, reimbursement fees, and restitution ordered by the Court in this cause.

☐ **Confinement as a Condition of Community Supervision.** The Court **ORDERS** Defendant confined days in as a condition of community supervision. The period of confinement as a condition of community supervision starts when Defendant arrives at the designated facility, absent a special order to the contrary.

**Fines Imposed Include (check each fine and enter each amount as pronounced by the court):**

☒ General Fine (§12.32, 12.33, 12.34, or 12.35, Penal Code, Transp. Code, or other Code) **$ 10,000.00** (not to exceed $10,000)

☐ Add'l Monthly Fine for Sex Offenders (Art. 42A.653, Code Crim. Proc.) **$** ($5.00/per month of community supervision)

☐ Child Abuse Prevention Fine (Art. 102.0186, Code Crim. Proc.) **$** ($100)

EXHIBIT A

☐ EMS, Trauma Fine (Art. 102.0185, Code Crim. Proc.) $ ($100)
☐ Family Violence Fine (Art. 42A.504 (b), Code Crim. Proc.) $ ($100)
☐ Juvenile Delinquency Prevention Fine (Art. 102.0171(a), Code Crim. Proc.) $ ($50)
☐ State Traffic Fine (§ 542.4031, Transp. Code) $ ($50)
☐ Children's Advocacy Center Fine - as Cond of CS (Art. 42A.455, Code Crim. Proc.) $ (not to exceed $50)
☐ Repayment of Reward Fine (Art. 37.073/42.152, Code Crim. Proc.) $ (To Be Determined by the Court)
☐ Repayment of Reward Fine - as Cond of CS (Art. 42A.301 (b) (20), Code Crim. Proc.) $ (not to exceed $50)
☐ DWI Traffic Fine (a/k/a Misc. Traffic Fines) (§ 709.001, Transp. Code) $ (not to exceed $6,000)

**Execution of Sentence**

☒ The Court **ORDERS** Defendant's sentence **EXECUTED**. The Court **FINDS** that Defendant is entitled to the jail time credit indicated above. The attorney for the state, attorney for the defendant, the County Sheriff, and any other person having or who had custody of Defendant shall assist the clerk, or person responsible for completing this judgment, in calculating Defendant's credit for time served. All supporting documentation, if any, concerning Defendant's credit for time served is incorporated herein by this reference.

**Furthermore, the following special findings or orders apply:**

_____.

**Date Judgment Entered:** 10/16/2025 2:54:24 PM

X Titiana D. Frausto

JUDGE PRESIDING

☐

Thumbprint

EXHIBIT A

REPORTER'S RECORD

VOLUME 2 OF 4 VOLUMES

TRIAL COURT CAUSE NO. 85,587-B

COURT OF APPEALS CAUSE NO. 07-25-00294-CR

FILED IN
7th COURT OF APPEALS
AMARILLO, TEXAS
12/15/2025 2:39:00 PM
BOBBY RAMIREZ
Clerk

| | | |
|---|---|---|
| STATE OF TEXAS | ) | IN THE DISTRICT COURT |
| | ) | |
| VS. | ) | POTTER COUNTY, TEXAS |
| | ) | |
| TARA ZOE RIOS | ) | 181ST JUDICIAL DISTRICT |

-----------------------------

PRETRIAL HEARING

VOIR DIRE

-----------------------------

On the 13th day of October, 2025, the following proceedings came on to be heard in the above-entitled and numbered cause before the Honorable Patrick Pirtle, Judge presiding, held in Amarillo, Potter County, Texas;

Proceedings reported by machine shorthand.

EXHIBIT B

A P P E A R A N C E S

FOR THE STATE OF TEXAS:
SBOT NO. 24095995
Ms. Taylor Guerrero
47th Judicial District Attorney's Office
350 SE 6th Avenue, Suite 3B
Amarillo, Texas 79101

FOR THE DEFENDANT:
SBOT NO. 24038759
Mr. William Clint Barkley
Panhandle Area Public Defender's Office
900 S. Polk, Suite 206
Amarillo, Texas 79101

SBOT NO. 24134066
Ms. Phoebe Giglotti
Panhandle Area Public Defender's Office
235 E. 3rd Street, Room 102
Hereford, Texas 79045

EXHIBIT B

# I N D E X

VOLUME 2

(PRETRIAL AND VOIR DIRE)

Page Vol.

**OCTOBER 13, 2025**


| | | |
|---|---|---|
| Announcements | 4 | 2 |
| Motion for Continuance | 4 | 2 |
| Motion for Continuance Denied | 12 | 2 |
| Jury Voir Dire by the State | 29 | 2 |
| Jury Seated | 92 | 2 |
| Venire Panel Excused | 93 | 2 |
| Jury Instructions | 94 | 2 |
| Adjournment | 101 | 2 |
| Court Reporter's Certificate | 102 | 2 |


EXHIBIT INDEX

(No exhibits offered or admitted)

EXHIBIT B

P R O C E E D I N G S

OCTOBER 13, 2025

(Open court, Defendant present, Venire Panel not present.)

PRETRIAL HEARING

THE COURT: For the record, this is Cause Number 85,587-B-CR, the State of Texas versus Tara Zoe Rios, here today for purposes of a jury trial.

Subject to pretrial motions, I notice that there is a motion in limine pending.

Is the State ready to proceed?

MS. GUERRERO: Yes, Your Honor.

THE COURT: Is the Defense ready?

MR. BARKLEY: Judge, we would ask for a continuance on this case for a variety of reasons, most importantly is the -- my --

THE DEFENDANT: That is not what I asked for at all.

MR. BARKLEY: -- being able to interact and discuss with my client the best ways to defend her, and I haven't still got that opportunity just because of what I think is going on with her, some -- some mental health, some drug use, and we just ask for a continuance, and I think in -- in a few days, I'll be able to start to get ready for -- for trial with her,

EXHIBIT B

with her assistance.

MS. GUERRERO: And, Your Honor, for the record, I did discuss with Mr. Barkley his request for a continuance, and I did tell him that the State would not opposed it due to all of those concerns that he has. Obviously, I know that it is in your discretion, but I did want that noted for the record.

THE DEFENDANT: That's not what I would like at all.

THE COURT: Are you Tara Zoe Rios?

THE DEFENDANT: Yes, sir.

THE COURT: What is it that you wanted to say?

THE DEFENDANT: I would like to go to trial today.

THE COURT: Okay. Are you mentally incompetent or insane?

THE DEFENDANT: No.

THE COURT: And are you able to communicate with your counsel?

THE DEFENDANT: I'm sorry?

THE COURT: Are you able to communicate with your counsel?

THE DEFENDANT: Yes, but they won't do anything that I've asked them. They won't listen. They

EXHIBIT B

won't help me. They won't -- they won't do anything for me. They're working against me as best I can tell. I mean, I don't think they're like trying to harm me, but they're not listening to me and doing what I asked. They work for me, right?

THE COURT: Well, what is -- well, first of all, I note that -- that Mr. Barkley represented you once before, and the court substituted counsel Lendon Ray. Was Mr. Ray retained counsel or was he --

THE DEFENDANT: I cannot hear you. I'm very sorry.

THE COURT: Mr. Barkley represented you at an earlier time, and he was removed as your counsel and Lendon Ray was -- was your --

THE DEFENDANT: Yes, and -- and I had to remove Lendon Ray because I -- I've been working on healing myself. EMDR didn't work for me. I have severe PTSD from childhood and from my marriage and my entire life, really, so I use psychedelics, and I dance, and I use my feet as the side to side, and I use the music to take me back in time, and I have been bringing up past memories, and I'm still trying to finish that. Like, it takes time. I've been working on that still. But what I have remembered is very dangerous, and I need people to go check on my children immediately.

THE COURT: You understand --

THE DEFENDANT: But I can't do anything to finish that or help my children from a jail cell or in this courtroom or with this thing on, and I need -- by the letter of the law, no one saw me take a drink. No one saw me drive. The keys were not in the ignition. They were lost. They were not accessible at all. My dad had to have a key made at the impound to get my car out. The police arrived an hour after I got stuck. The man saw me -- the railroad worker saw me 45 minutes to an hour after I got stuck. By the letter of the law, it's not a DUI. It's a PI. I was walking, period. I was two blocks away from my damn car. And I would like to be -- I would like this charge to go away, so I can focus on what's really important.

THE COURT: And -- okay. You understand that if we were to proceed today, I would need your cooperation in terms of any kind of outbursts or --

THE DEFENDANT: I'm so sorry. I can't hear you.

THE COURT: I said, if we proceed with your trial today, you understand I'll require your cooperation, and require your not speaking out when you're not supposed to. You would not be entitled to address the jury yourself. Your counsel would do that

on your behalf.

THE DEFENDANT: I would like to represent myself. Like, these guys aren't even doing it.

THE COURT: I strongly would recommend that you not represent yourself.

THE DEFENDANT: I understand that. I do understand your recommendation.

THE COURT: Not certainly in your best interest.

Ms. Rios, what I'm perceiving is that you're anxious to get this matter resolved.

THE DEFENDANT: Yes, it's -- this is ridiculous. It's a PI. This -- this has held me back for almost two years now. Are you kidding me? This is ridiculous. And I was released six hours after I was arrested for lack of probable cause because there is no -- there is no -- there's no reason for this charge at all.

THE COURT: All right. Well, that will be a matter, of course, for -- for a jury to decide, and that's what we're here for today.

THE DEFENDANT: Cool. I would like do that. Let's do that. I would like to talk to them now. And I don't need them.

THE COURT: Well, they will remain as your

EXHIBIT B

counsel.

THE DEFENDANT: I'll speak for myself though. And I'll ask the questions and stuff. I'm allowed to do that. It's my legal right.

THE COURT: It is your legal right to self-represent, but that is something that I would strongly --

THE DEFENDANT: I'm sorry?

THE COURT: I said, that is something I strongly caution you not to do.

THE DEFENDANT: I understand -- I understand your caution. I accept your -- your recommendation, but I'm going go ahead and do what I have the right to do. Thank you.

THE COURT: So let me make sure I understand. Your desire is to proceed self-represented. Here -- here's where we are. I'll just tell you where I'm coming from. If you're going to allow counsel to represent you, then we'll proceed today. If you insist on discharging your counsel and proceeding what we call pro se or representing yourself, which you do have a right to do, then I'm going to defer this matter back and let Judge Frausto make the decision with respect to your self-representation.

THE DEFENDANT: And I would like to be

released on my own recognizances, so that I can go to the pavilion and start working with someone on what I've been doing. I need to work with someone professionally. That was my next move, but I needed to clear this first.

THE COURT: I understand that. The Court, because you're here on a bond surrender, the Court is going to reset your bond at $15,000. No personal recognizance, which means that in order for you to be released, you're going to have to make your bond -- you're going to have to make bond again to be released.

THE DEFENDANT: So it's going to cost me more money on a charge that we should -- let's go to trial right now then. Let's do it. That's the final answer. Let's finish this today. Bring the jury in. Let's do it. Period.

MR. BARKLEY: Judge, I -- I just -- I go back to my original thought that I have not had an opportunity to --

THE DEFENDANT: Plenty of opportunities.

MR. BARKLEY: -- to work with her, to get her feedback on things. She hasn't been able to help me --

THE DEFENDANT: I tell him. He doesn't listen.

MR. BARKLEY: -- in my own -- in her own

defense, and I think there's enough evidence that -- medically that she --

THE DEFENDANT: I would like to go to trial now with a jury today.

MR. BARKLEY: -- that she has things going on that -- that might need to be --

THE DEFENDANT: Why am I fighting my own lawyer?

MR. BARKLEY: -- have the proceedings wait until she's actually healthy to be in court.

THE DEFENDANT: I am very healthy. I would like to have this removed. I would like to be able to go get dressed properly and have the jury trial today. Thank you.

THE COURT: Well, in order for you to --

THE DEFENDANT: My things are here. They said they would give me jewelry back and stuff, but they haven't done that yet either. So I would like my things returned to me. I would like my rights heard. I would like my rights not be ignored and ran over like they have been all my life. And I would like to have a jury trial now and go home this afternoon. Thank you.

THE COURT: Well, I can -- I can guarantee you you will not go home this afternoon because the trial will not be finished.

EXHIBIT B

THE DEFENDANT: Full acquittal, that's what will happen. Let's get it done.

THE COURT: Well, and that's certainly a possibility after trial. But the trial is not going to be concluded today. So you'll remain in custody until time -- until after the trial is completed, which will be possibly tomorrow potentially.

THE DEFENDANT: Well, let's do it. Let's go.

THE COURT: All right. Counsel, motion for continuance will be denied. We'll seat a jury.

THE DEFENDANT: I'm sorry?

THE COURT: I said we'll go ahead and proceed with a jury selection today.

THE DEFENDANT: Great. Thank you.

THE COURT: All right. While we're here in the courtroom, does the State have any response to the Defendant's motion in limine.

MS. GUERRERO: Your Honor, I don't have a response to the motion in limine.

THE BAILIFF: I'm going to have you move your legs just so --

THE DEFENDANT: It can't because it's cutting me open. It is cutting my ankle open. So this is not okay. This is illegal. And I haven't been read

EXHIBIT B

my rights either, by the way.

THE COURT: Well, now is not the time for me to admonish you of your rights.

THE DEFENDANT: Well, this is ridiculous. I can't put it out like -- this is the only way --

THE BAILIFF: I'll go down there and talk to them about your jewelry.

THE DEFENDANT: It's hurting me very bad. You can see the marks and everything. Take this -- this isn't necessary. I'm not going anywhere. I want to be here. I'm the only one that wants to be in here and do this today. Please take this off, please.

THE BAILIFF: I'll go get your jewelry.

THE COURT: That's a matter for the sheriff's department, and they are recommending that --

THE DEFENDANT: Who runs this shit show?

THE COURT: Ms. Rios, if you'll cooperate with counsel or cooperate with the bailiff there.

THE DEFENDANT: I would like to make a phone call.

THE COURT: Off the record.

(Defendant taken out of courtroom.)

(Discussion off the record.)

(Recess taken from 1:04 to 1:22 p.m.)

(Open court, Defendant present, Venire

EXHIBIT B

Panel not present.)

MS. GUERRERO: Judge, the State has complied with the Defendant's request for notice of State experts. We filed our witness list back in August detailing our fingerprint experts, our DPS lab experts and the registered nurse. On the motion in limine, I have no objection to the motion in limine. And then there were a few things on the motion for production of evidence that I had to go over.

MR. BARKLEY: Okay.

MS. GUERRERO: Judge, there were two requests for any written or recorded statements of any person, substance of any oral statements of any person. Those are not limited to the State or any agents of the State. That is just not, like, plausible to do. We're not responsible for any written or recorded statements of any person at all anywhere who could possibly have any information whatsoever for this Defendant, and so I would ask that that not be granted.

MR. BARKLEY: And, Judge, I -- I see how that's overly broad, and don't have a problem with that.

THE COURT: All right.

THE DEFENDANT: Excuse me. I'm not understanding that and I'm trying to represent myself, so could you explain that.

EXHIBIT B

THE COURT: Ms. Rios, let me make clear. We're not proceeding today with you representing yourself.

THE DEFENDANT: I know. I'm just trying to understand what's being said. Thank you. This is my trial, isn't it?

THE COURT: Yes, ma'am, it is.

THE DEFENDANT: I would like to understand everything clearly.

THE COURT: All right. Prior to today's proceeding, your defense counsel had filed motions with the State requesting information that would assist them in your defense, and the State is just announcing to the Court for the purposes of a record that the State has complied with that request.

This last exchange was an exchange that part of the request was overly broad and not necessary for the State to disclose, and your counsel has agreed. That's -- that's kind of the --

THE DEFENDANT: So she doesn't have to disclose anything?

THE COURT: No, she's disclosed everything that the law requires that they disclose.

THE DEFENDANT: Okay. I would like to see the witness list.

EXHIBIT B

MS. GUERRERO: And, Your Honor, on C and D, it says the names and addresses of all persons who have or have had information favorable to the Defendant. Any and all information that we have is disclosed in evidence and in discovery. I don't believe that there is any specific holding in Brady or Michael Morton that says we have to lay out the names and addresses of those people. And then on D, it says the names and addresses of all people that we don't intend to call. We only have to give a witness list of those we do intend to call. The rest are already in discovery if the Defense would like to call them, and we did comply with a witness list.

MR. BARKLEY: And I do believe that they have -- I have no reason to doubt that they've failed to comply with Michael Morton. They've supplied everything that they had, that I -- that I know of. I have no reason to doubt that. And, again, I -- I do see how C and D are overly broad as well, and I'm satisfied with what they've provided us for her defense, and I have no objections to getting rid of the language or getting rid of C and D in its entirety.

MS. GUERRERO: And other than that, I have no objection to the rest, and I believe that we have complied with those requests.

EXHIBIT B

THE COURT: Court will note State's statement of compliance, and State's non-opposition to the motion in limine. That motion in limine will be granted. And the Court will -- and I ask that the jury be seated.

THE DEFENDANT: Do I need to add my people to this list that I would like to call?

THE COURT: That's -- that's something you need to discuss with your counsel.

THE DEFENDANT: I am my counsel. I'm asking you how --

THE COURT: Ms. Rios, we've been through this several times. If you want to insist on being your own counsel, the Court is going to allow you to do that, but not today. Today we have a jury selected -- a jury panel waiting.

THE DEFENDANT: Okay. Take me to jail. I'm -- I -- I would like -- I don't want them. I don't want them as my counsel. I'll -- I'll represent myself. I would like to go to jail and ask to look -- and a phone.

THE COURT: All right.

THE DEFENDANT: I would like a phone call. I've asked for a phone call three times. Take me to jail. Take me to Potter. I will -- y'all are fired.

EXHIBIT B

Thank you. I will not need y'all at all.

THE COURT: Ms. Rios, I'm not arguing with you. You have your right to represent yourself. But you -- you're expressing extreme desire to get this matter over with.

THE DEFENDANT: I do want this matter over with, but I also don't want be to railroaded again.

THE COURT: No one is trying to railroad you here.

THE DEFENDANT: They got me on the first one. They screwed me over.

THE COURT: I'm sorry?

THE DEFENDANT: Yes, money was exchanged through PD, Ana Estevez, my attorney Lendon Ray, and my dad to get me charged on that. Ana Estevez should have never been my -- my judge. She should have recused herself. She had personal issues with me. She shouldn't have even been my judge on that first case. This should be a 1244-A, period, at the very least, if not just thrown out. But that has happened to me before, and I'm very, very nervous that that's happening again. That was my first charge. Yes, that is what happened.

THE COURT: I'm sorry?

THE DEFENDANT: And I did five years

probation on that.

THE COURT: I don't understand the relevance of that to this proceeding. You're talking about another charge.

THE DEFENDANT: The relevance is the -- the reason I have such a passionate appearance here. The -- the reason I'm so passionate about not getting screwed over again.

THE COURT: Okay. So --

THE DEFENDANT: That's the reason for that.

THE COURT: I'm just trying to understand. It's your representation that in another proceeding, not this case, in another proceeding, you were unfairly treated?

THE DEFENDANT: Yes, very much so.

THE COURT: And that was a case involving Judge Estevez?

THE DEFENDANT: Yes.

THE COURT: And what was the disposition of that case?

THE DEFENDANT: That was an intoxicated assault with a vehicle. I never did get to see my tox screen at all on that case. No one would show it to me. I asked for an entire year to see the -- the tox screen on that case. You cannot. And there was no way, there

was no way, because I had not used or drank, so I don't understand why I got that charge, but I was very, very sick then, very sick from using meth. And I was confused. And could not stand up for myself, and this time I am not nearly as sick and do want to stand up for myself and make sure that I'm being treated fairly this time, and that that does not ever happen again.

MS. GUERRERO: And, Your Honor, to answer your question. The -- the disposition of that case was she was placed on probation on that case and another case at the same time, straight probation on that one and deferred on another one.

THE DEFENDANT: They were -- they were the same case. So it was possession because the passenger who got hurt in my vehicle accident had a sack on him. And I picked it up and put it in my pocket not -- because I was in -- in, like, major shock from the accident. But as soon as I asked for Martin Morgan, everything got really yucky. But Martin Morgan raped my mother and possibly me when I was a child, and he is a police officer in Amarillo, Texas. And none of this -- I would like a change of venue as well. I would like this moved to Lubbock as well.

THE COURT: Okay.

THE DEFENDANT: Yes, that is exactly what

EXHIBIT B

needs to happen. This is not safe for me at all. Amarillo is not safe.

THE COURT: Okay.

THE DEFENDANT: That is exactly what needs to happen.

THE COURT: I just want to be clear where we are today. Are you stating -- well, you do not want to proceed with trial today?

THE DEFENDANT: No, I want to move this out of Amarillo.

THE COURT: Okay.

THE DEFENDANT: I want a change of venue.

THE COURT: Well, I -- you know, I don't want to get ahead of myself here. That -- that's a motion that you would make to the Court, and I can already tell you, just based on my 35 years of experience in the legal profession, that's not going to happen. You're not going to get a change of venue in a case like this. So you need to come to grips with reality that you're going to go to trial on this charge in Potter County before either a judge or a jury. And you --

THE DEFENDANT: Well, let's just get it over with.

THE COURT: Ms. Rios, you are flipping --

EXHIBIT B

THE DEFENDANT: Let's just do it. Let's just do it. Let's do it. Let's get it done. I'm sorry. I'll sit here and shut up. Let's go, but I'm testifying, so let's go.

THE COURT: All right. We'll proceed. Go ahead and seat the jury.

(Pause in proceedings.)

THE COURT: I'm going to admonish you to not speak out during the jury selection process. You asked that your leg brace be removed.

THE DEFENDANT: Yes, let's take it off, and they can see the marks.

MS. GIGLOTTI: Tara, Tara.

THE DEFENDANT: That's great. Thank you, sir.

THE BAILIFF: Okay. They're on the way.

THE COURT: The jury is on the way?

THE BAILIFF: No, the jailer is on the way to take it off.

THE COURT: Okay. Take it off.

(Recess taken from 1:36 to 1:51 p.m.)

(Open court, Defendant present, Venire Panel present.)

THE COURT: Counsel, go ahead and be seated.

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-25-00294-CR

TARA ZOE RIOS, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 181st District Court
Potter County, Texas
Trial Court No. 085587-B-CR, Honorable Titiana Frausto, Presiding

April 14, 2026

## MEMORANDUM OPINION

Before **PARKER**, **C.J.**, and **DOSS** and **YARBROUGH**, **JJ.**

Appellant, Tara Zoe Rios, appeals from her conviction by jury of the offense of driving while intoxicated with a child passenger under 15 years old, a state jail felony under Penal Code Section 49.045(b).[1] The jury assessed the maximum punishment of

[1] *See* TEX. PENAL CODE § 49.045 (describing offense of driving while intoxicated with child passenger).

EXHIBIT C

24 months in state jail and $10,000 fine. Appellant challenges her conviction through several issues. We affirm.

## Background

Appellant's vehicle was found on railroad tracks in Amarillo. Her five-year-old son was in the back seat. A railroad employee saw Appellant stumbling and smelling of alcohol. Appellant fled on foot with her son but was caught by an officer who administered field sobriety tests showing intoxication. A blood test revealed Appellant's blood alcohol concentration was 0.143, exceeding the 0.08 legal limit. Appellant was later charged as noted.

A judge sitting by assignment convened a pre-trial hearing. At the outset, Appellant's attorney[2] requested a continuance of trial proceedings, setting forth as grounds "some mental health, some drug use" by Appellant. Appellant interrupted the request, stating she wanted to proceed to trial that day. She expressed her displeasure with her attorneys. When told counsel would address the jury on her behalf, Appellant requested self-representation. She stated her attorneys would not do what she asked and were working against her.

Despite Appellant's repeated assertions that she desired to represent herself, the visiting judge told her they would not proceed to trial that day with her representing herself. The court instead offered Appellant the choice to (1) proceed with appointed counsel that

[2] Counsel was appointed to represent Appellant in this matter. Another attorney later substituted but after counsel and Appellant could not agree on representation, the originally-appointed attorney was again appointed to represent her.



EXHIBIT C

day or (2) have the sitting judge rule on her self-representation request later. If Appellant chose the second, a *Faretta* hearing would be held at a later date, and a bond would be set at $15,000. After initially requesting jail and a phone call, Appellant ultimately chose to proceed with counsel, making statements that included, "Let's just get it over with," "let's go to trial right now then. Let's do it. That's the final answer. Let's finish this today. Bring the jury in. Let's do it. Period." After denying counsel's oral motion for continuance, the court proceeded to address other issues.

Appellant continued to assert her right to represent herself but also reiterated her desire to resolve the matter that day. She told the court she wanted the matter over with but "also [didn't] want to be railroaded again." After some additional discussion, Appellant said "Let's just do it. Let's just do it. Let's do it. Let's get it done. I'm sorry. I'll sit here and shut up. Let's go, but I'm testifying, so let's go."

## ANALYSIS

Self-Representation

By her first three issues, Appellant challenges the trial court's denial of her right to represent herself, arguing the choice she was forced to make denied her constitutional rights. She queries: (1) when, as she did here, a defendant timely asserts the right to self-representation, does the structural and systemic right bar trial from the beginning before a *Faretta* hearing is held, (2) even if the right to self-representation may be waived or abandoned once requested and denied, does the record show she did so, and (3) was



EXHIBIT C

she denied due process when she was required to choose between the right to self-representation and the right to a speedy trial.[3] We overrule the issues.

Appellant argues when a defendant timely asserts the right to self-representation, a *Faretta* hearing is absolutely required before trial begins. She contends this is a structural and systemic constitutional right that cannot be waived, citing *Faretta v. California's*[4] holding that unwanted counsel represents the defendant only "through a tenuous and unacceptable legal fiction." Therefore, she claims, the trial court's failure to conduct such a hearing before proceeding to trial violated her constitutional rights.

Next, Appellant contends she never voluntarily waived her right to self-representation, noting that "one cannot waive or abandon a right one does not possess" since the trial court never granted the right. She asserts she was forced to choose between two constitutional rights, that of self-representation and that of a speedy trial, which violated due process under *Simmons v. United States*, 390 U.S. 377, 394 (1968), which held "we find it intolerable that one constitutional right should have to be surrendered in order to assert another." In making her argument, Appellant contends being forced to choose between indefinite incarceration or paying bond, versus unwanted counsel representation does not constitute voluntary waiver, but is instead acquiescence to avoid worse consequences.

---

[3] Appellant initially also raised another issue, arguing that if the State claimed she was incompetent to represent herself due to mental health issues or drug use, the same evidence would indicate incompetence to stand trial, requiring a stay for psychological evaluation under Article 46B.004(d). In her reply brief, Appellant notes the State did not contest her competence and therefore, the issue is moot. Accordingly, we will not address it.

[4] 422 U.S. 806, 821, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975).



EXHIBIT C

Standard of Review and Applicable Law

A trial court's decision on a defendant's request to represent herself is reviewed under an abuse of discretion standard. *See Chadwick v. State*, 309 S.W.3d 558, 561 (Tex. Crim. App. 2010). Additionally, the "control of the business of the court is vested in the sound discretion of the trial judge." *Marquez v. State*, 921 S.W.2d 217, 223 (Tex. Crim. App. 1996). We view the evidence in the light most favorable to the trial court's ruling. *Lathem v. State*, 514 S.W.3d 796, 802 (Tex. App.—Fort Worth 2017, no pet.).

"It is well established that every criminal defendant has the constitutional right to the assistance of counsel, although not counsel of [her] own choice, and the constitutional right to represent [her]self." *Id.* In *Faretta*, the Court held that a defendant has a constitutional right to proceed without counsel when he or she voluntarily, knowingly, and intelligently chooses to do so, and the state may not constitutionally force a lawyer upon him or her. *Faretta*, 422 U.S. at 821. While a defendant has a fundamental right to represent him or herself, representation by counsel is the standard, not the exception, and there is a strong presumption against the waiver of the right to counsel. *Id.* at 813–14. The Sixth Amendment "embodies two competing rights because exercising the right to self-representation necessarily means waiving the right to counsel." *Lathem*, 514 S.W.3d at 802.

The right of self-representation must be timely, clearly, and unequivocally asserted. *Faretta*, 422 U.S. at 835. "When the plain, ordinary, and generally accepted meaning of an accused's statements signify a desire to proceed pro se, the right is clearly and unequivocally asserted." *Cochnauer v. State*, No. 02-19-00165-CR, 2021 Tex. App.



EXHIBIT C

LEXIS 7387, at *10 (Tex. App.—Fort Worth Sept. 2, 2021, no pet.) (mem. op., not designated for publication) (citing *Lathem*, 514 S.W.3d at 808). That right may, however, be waived after it has been asserted.

To be effective, a defendant's waiver of her right to self-representation must be made voluntarily, knowingly, and intelligently. *Anderson v. State*, No. 02-23-00211-CR, 2024 Tex. App. LEXIS 5309, at *8–9 (Tex. App.—Fort Worth July 25, 2024, pet. ref'd) (mem. op., not designated for publication). To assess an effective waiver, a court must consider the totality of the circumstances. *Id.* A trial court is not required to follow any formulaic questioning or particular script in ascertaining the effectiveness of the waiver. *Id.* at *9. Moreover, while the record must show a defendant waived her right to self-representation after it was asserted, "it is not subject to the same stringent standards as the waiver of the right to counsel." *Funderburg v. State*, 717 S.W.2d 637, 642 (Tex. Crim. App. 1986). A waiver may be found if it reasonably appears to the court that defendant has abandoned her initial request to represent herself. *Id.* "Of course, a defendant has not waived [her] right to self-representation if [she] has merely acquiesced to a trial court's unmistakable denial of [her] request to represent [herself]." *Id.*

Lastly, while a waiver must be voluntary, that does not mean, "that a court may not, under certain circumstances, require the defendant to select from a limited set of options a course of conduct regarding his representation." *Buchanan v. State*, No. 02-19-00311-CR, 2020 Tex. App. LEXIS 6245, at *9 (Tex. App.—Fort Worth Aug. 6, 2020, pet. ref'd) (mem. op., not designated for publication). "A criminal defendant may be asked, in the interest of orderly procedures, to choose between [self-representation] and



EXHIBIT C

another course of action as long as the choice presented to [her] is not constitutionally offensive." *Id.*

Application

The record indicates Appellant expressed both a desire to go to trial on the day of the hearing and to represent herself. She vacillated between which was most important to her but, when faced with the option to proceed to trial that day with counsel or to wait for further proceedings with the sitting judge, she ultimately chose to move forward with counsel that day.

The choices posed to her by the assigned judge were constitutional and did not deprive her of any constitutional rights. *Buchanan*, 2020 Tex. App. LEXIS 6245, at *9. The visiting judge did not deny Appellant's right to represent herself. Indeed, he explicitly told Appellant she could represent herself, just not that day. Rather, Appellant was informed that if she chose that route, she could take that up with the sitting judge of that court at a later time. This distinguishes this case from those in which the trial court denied the defendant the right to self-representation. *See Lathem*, 514 S.W.3d at 812 (court found outright denial of defendant's request for self-representation was an abuse of discretion). *See also Alford v. State*, 367 S.W.3d 855, 865 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (finding abuse of discretion when trial court expressly denied request for self-representation and there was no indication of abandonment of that right).

Appellant argues "one cannot waive or abandon a right one does not possess." Here, however, Appellant asserted her right to represent herself and thus, "possessed" it at that time. The court did not deny her request, but rather presented her with a valid



EXHIBIT C

choice to proceed on that path or to choose another with counsel representing her. Appellant waived her right to represent herself and chose to continue proceedings with counsel so that resolution of the criminal charges against her could be reached. Appellant was not, at any time, denied the right to represent herself; she was simply given the choice to proceed with counsel or proceed with her request to represent herself at a later time.

Moreover, Appellant was not forced to choose between two constitutional rights, i.e., that of self-representation and that of a speedy trial. The matter was set to proceed with the jury trial the day after the pre-trial hearing. And, the record shows the sitting judge did return the following day and conducted a trial on the merits. Appellant did not re-urge her request to represent herself at the start of trial. The defense announced ready, and Appellant entered her plea of "not guilty" without reference to any desire to represent herself.

The trial court provided two constitutionally acceptable choices to Appellant. Appellant chose one of those options and thus waived her right to self-representation. Having found valid waiver, no *Faretta* hearing was required. *See Carroll v. State*, 176 S.W.3d 249, 255 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd) (the trial court's failure to hold a *Faretta* hearing is not error if the court determines defendant abandoned the request to proceed pro se). We find no requirement, as Appellant suggests, a *Faretta* hearing is absolutely required under these circumstances.

<u>Bill of Cost Issues</u>

Lastly, Appellant challenges the assessed fine and court costs. The trial court initially ordered payment of fines and costs but then entered an addendum waiving them



EXHIBIT C

due to indigence. But, because the Bill of Cost included a $10,000 fine and $435 in court costs, Appellant initially requested deletion of same.

The record reflects a Bill of Cost that shows an initial amount due of $10,435.00. It also shows the amount previously credited to be $10,435.00 and indicates the remaining amount due is $0.00. In her reply brief, Appellant concedes the Bill of Cost "does indeed reflect that [Appellant] will be charged nothing." There is thus nothing to reform and we overrule the issue.

## CONCLUSION

Having overruled each of Appellant's issues, we affirm the judgment of the trial court.

Alex Yarbrough
Justice

Do not publish.



EXHIBIT C

OFFICIAL NOTICE FROM COURT OF CRIMINAL APPEALS OF TEXAS FILE COPY
P.O. BOX 12308, CAPITOL STATION, AUSTIN, TEXAS 78711

**7/23/2026** **COA Case No. 07-25-00294-CR**
**RIOS, TARA ZOE** **Tr. Ct. No. 085587-B-CR** **PD-0425-26**
On this day, the Appellant's petition for discretionary review has been refused.
Deana Williamson, Clerk

JOHN BENNETT
PANHANDLE AREA PUBLIC DEFENDER
900 S. POLK STREET, SUITE 206
AMARILLO, TX 79109
* DELIVERED VIA E-MAIL *

EXHIBIT D